902 F.2d 1069
 Catherine LARSEN, Plaintiff-Appellant,
v.
NMU PENSION TRUST OF the NMU PENSION & WELFARE PLAN, and
Board of Trustees of the NMU Pension Trust of the
NMU Pension & Welfare Plan, Defendants-Appellees.
 Nos. 13, 81, Docket 89-7201, 89-7253.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 4, 1989.
Decided May 2, 1990.
 
 Edgar Pauk, New York City (Legal Services for the Elderly, New York City, of counsel), for plaintiff-appellant.
 Ned R. Phillips, New York City (Phillips Cappiello Kalban Hofmann & Katz, P.C., New York City, of counsel), for defendants-appellees.
 Before NEWMAN, PRATT and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Catherine Larsen brings this appeal from a judgment entered on a memorandum and order of the United States District Court for the Southern District of New York, Lloyd F. MacMahon, Judge, denying her motion for summary judgment, granting the motion of defendants NMU Pension Trust of the NMU Pension & Welfare Plan and its Board of Trustees for summary judgment, and dismissing the complaint. Defendants cross-appeal from the prior denial of their motion to dismiss the complaint as time-barred.[1] We reverse the order entering summary judgment, affirm the order refusing to dismiss the complaint as time-barred, and remand for further proceedings.
 
 Background
 
 2
 Plaintiff is the widow of Robert P. Larsen, a merchant mariner who was a participant in the NMU Pension & Welfare Plan (the "Plan"). The Plan is a multi-employer arrangement established to provide retirement benefits to seamen employed aboard vessels of American flag steamship companies that have collective bargaining agreements with the National Maritime Union of America. During all times relevant to this action, the Plan has been subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. Secs. 1001-1461 (West 1985 & Supp.1989).
 
 
 3
 The Plan makes available a number of different pensions for its participants, depending upon eligibility. The methods by which these pensions are payable include an "Employee and Spouse" option (the "Option") under which a married participant receives a somewhat reduced pension for life, followed by lifetime survivor's benefits for the spouse in the amount of half the pension previously payable to the participant. The question presented by this litigation is the present availability of the Option to Mrs. Larsen.
 
 
 4
 The facts of this case were the subject of an extensive stipulation between the parties. As will appear, a post-argument amendment to that stipulation is crucial to the disposition of this appeal.
 
 
 5
 An applicant for a pension under the Plan must, in addition to completing a pension application form, fill out a form entitled "Husband and Wife Pension" (the "Form") on which the applicant must indicate whether he wishes to reject, elect, or obtain more information about the Option. The Form reads in pertinent part as follows:
 
 
 6
 Please check the appropriate box. If you are married you must check either A, B or C. If you are not married, a husband and wife pension is not payable, and you must check A.
 
 
 7
 A [Box] I do not wish to receive my pension benefits in the form of a husband and wife pension. I understand that I cannot, for any reason, revoke this choice once my pension becomes payable.
 
 
 8
 B [Box] I do wish to receive my pension benefits in the form of a husband and wife pension. Enclosed is my spouse's proof of age and proof of our marriage. I understand that I cannot, for any reason, revoke this choice once my pension becomes payable.
 
 
 9
 C [Box] I may wish to receive my pension benefit in the form of a husband and wife pension but first wish to be informed of the exact amount of the pension benefits payable to myself and my spouse under the husband and wife pension.
 
 
 10
 On September 21, 1977, approximately two years after he sailed for the last time and shortly after his fifty-fifth birthday, Mr. Larsen applied for retirement benefits under the Plan. He was assisted in completing his application forms by Robert Meyer, then the supervisor of the Plan's pension department, who, with an exception hereinafter specified, completed the forms for Mr. Larsen's signature. Mr. Larsen indicated on his pension application form that he was applying for a disability pension, but added the notation "or highest $ available." Adding such a notation was a common practice, since at the time of an application it would not be known w hether the applicant would be entitled t o a higher non-disability pension. M r. Larsen was ultimately awarded an age pe nsion of $327.93 per month, which ex ceeded the maximum available disability pen sion of $250.00 per month.
 
 
 11
 In filling out the Form, Mr. Larsen checked the box next to "A," which states in part: "I do not wish to receive my pension benefits in the form of a husband and wife pension." On the other hand, he also checked the box next to "B," which states in part: "I do wish to receive such benefits in the form of a husband and wife pension," and filled in his wife's date of birth elsewhere on the Form, as was appropriate only in the case of the "B," rather than "A," election. The "B" checkmark was lined out, however, and near it appeared the word "omit" and Mr. Larsen's initials.
 
 
 12
 Mr. Larsen's pension became effective on October 1, 1977. He received a total of thirty-four monthly pension payments, each in the amount of $327.93, before he died on July 12, 1980. After that date, plaintiff received twenty-six payments of the same amount, the final one being paid on September 1, 1982, pursuant to a provision of the Plan requiring the completion of sixty payments where a married participant who does not elect the Option dies before receiving sixty monthly payments.
 
 
 13
 Mrs. Larsen thereafter questioned the Plan concerning the termination of her benefits. In a letter dated December 6, 1985, the Plan responded that Mrs. Larsen had been entitled only to the balance of the sixty monthly disability payments, together with a one-time payment of $1500.00, and concluded: "All monies have been paid that are payable and there are no further monies due the widow of Mr. Robert P. Larsen." Her counsel subsequently sent to the Plan a letter dated June 26, 1986 and identified as an "Appeal from denial of survivor's benefits." The Plan responded on July 25, 1986 that, "absent any new facts and on the basis of the existing record, there is simply no basis on which the Plan can now pay survivor's pension benefits to your client."
 
 
 14
 Mrs. Larsen commenced this action on October 24, 1986 pursuant to the civil enforcement provision of ERISA, 29 U.S.C. Sec. 1132 (1982 & Supp. V 1987). Her amended verified complaint alleged, inter alia, that Mr. Larsen was "never provided the opportunity to exercise a proper election of a survivor's annuity," i.e., that his waiver of the Option was invalid. Claiming that defendants had violated ERISA and breached their fiduciary duties, Mrs. Larsen sought declaratory and injunctive relief, together with compensatory and punitive damages, costs and attorney's fees.
 
 
 15
 The district court initially denied a motion by defendants to dismiss the action as time-barred. Following discovery, Mrs. Larsen moved and defendants cross-moved for summary judgment. The district court granted the cross-motion in a memorandum dated January 17, 1989. Judgment was then entered dismissing the complaint, and a timely appeal from that judgment followed.
 
 
 16
 The district court found that Mr. Larsen "was fully informed of his rights when he elected not to receive participant and spouse benefits," and that the waiver was thus a valid one. The court noted that prior to applying for a pension, Mr. Larsen had received various printed materials from the Plan "giving a detailed and clear explanation of participant and spouse benefits," and "written 'in simple and unmistakeable language easy enough for the average plan participant to be apprised of his rights' " (quoting Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 914 (2d Cir.), cert. denied, 459 U.S. 1039, 103 S.Ct. 454, 74 L.Ed.2d 607 (1982)). The district court also ruled that the Plan owed a fiduciary duty to Mr. Larsen to provide information that was " 'sufficiently accurate and comprehensive to give fair notice to the participants and beneficiaries of their rights' " (quoting Morse v. Stanley, 732 F.2d 1139, 1148 (2d Cir.1984)), but concluded that there had been no breach of that duty.
 
 
 17
 When the case was before the district court, however, the parties had stipulated that:
 
 
 18
 At the time Mr. Larsen retired, no Employee and Spouse Pension was available to disability retirees, and the then Pension Supervisor, Mr. Robert Meyer, so advised disability pension applicants.
 
 
 19
 The accuracy of this statement was drawn into question at the oral argument of this appeal, and this court thereafter granted an uncontested motion by defendants to supplement the record by substituting the following stipulation:
 
 
 20
 At the time Mr. Larsen retired, an Employee and Spouse Pension was available to disability retirees, but the then Pension Supervisor, Mr. Robert Meyer, advised disability pension applicants otherwise. However, Mr. Meyer has no specific recollection of what he may or may not have said to Mr. Larsen.
 
 
 21
 Mr. Meyer testified in deposition that he had no specific recollection concerning Mr. Larsen's application, more than ten years earlier, for pension benefits. He further testified, however, that if a disability pension was provided, the participant could not elect the Option, and that he always advised married participants about the availability of the Option.
 
 
 22
 The introductory outline of the applicable NMU Pension Plan Regulations states that "all pensions are payable in the Employee and Spouse Benefit Form, unless rejected," and makes no exception for disability pensions. The Plan later specifies, furthermore, that "[u]pon retirement, a pension shall be paid in the form of an Employee and Spouse Pension, unless the Employee has filed with the Trustees in writing a timely rejection of that form of pension subject to all the conditions of this Article." A notice circulated to the NMU membership in February, 1976, however, included statements in two tables attached to the notice that the Option was "Not Applicable for Disability Pensions."
 
 Discussion
 
 23
 On this appeal, we are asked by plaintiff to reverse the decision below and direct the entry of summary judgment in her favor. Defendants urge that we affirm the decision granting their motion for summary judgment. In the alternative, defendants cross-appeal from Judge MacMahon's earlier interlocutory order refusing to dismiss plaintiff's claims as barred under the applicable statute of limitations. We address these points in turn.
 
 
 24
 A. Summary Judgment.
 
 
 25
 Summary judgment is proper when it appears "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see Murray v. National Broadcasting Co., 844 F.2d 988, 992 (2d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988). On appeal, we must subject the district court's judgment to plenary review, and apply the same summary judgment test as applied by the district court. See Bersani v. Robichaud, 850 F.2d 36, 46 (2d Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1556, 103 L.Ed.2d 859 (1989); see also 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 2716 (2d ed. 1983 & Supp.1990). Our role is " 'only [to] determine whether there are issues to be tried.' " Schering Corp. v. Home Ins. Co., 712 F.2d 4, 9 (2d Cir.1983) (quoting Heyman v. Commerce and Industry Co., 524 F.2d 1317, 1319-20 (2d Cir.1975)).
 
 
 26
 Applying that standard to this case, we conclude that the summary judgment granted below must be reversed. Whatever the propriety of that ruling on the record before the district court, it cannot survive the amended stipulation to which the parties have agreed on appeal. The theory of plaintiff's case is that Mr. Larsen's election to forgo the Option, which concededly occurred, was induced by a material misrepresentation. The parties have now stipulated that a misrepresentation did occur, in that Mr. Larsen was advised that the Option was not available to a participant selecting a disability pension, when, in fact, it was so available. Since Mr. Larsen apparently selected the Option at the outset, but then reversed that election, a genuine issue of material fact exists as to whether the conceded misrepresentation by the Plan's representative induced Mr. Larsen's ultimate decision. Accordingly, defendants are not entitled to summary judgment.
 
 
 27
 It would not be appropriate, on the other hand, to grant summary judgment to Mrs. Larsen at this juncture. Even on the original record presented to us, there was ambiguity, and therefore a genuine issue of material fact, concerning Mr. Larsen's election on the Form to forgo the Option. Furthermore, the parties should be afforded an opportunity to present additional evidence in light of the altered posture of the case resulting from the post-argument amendment of their stipulation. Cf. Krijn v. Pogue Simone Real Estate Co., 896 F.2d 687, 690 (2d Cir.1990) (plaintiff must be given opportunity to submit additional evidence on merits where given no adequate notice that motion to dismiss had been converted to motion for summary judgment on merits).
 
 
 28
 We must therefore remand, unless Mrs. Larsen's claim is barred by the applicable statute of limitations. We turn to that issue.
 
 
 29
 B. Statute of Limitations.
 
 
 30
 In Miles v. New York State Teamsters Conference Pension Plan, 698 F.2d 593, 598 (2d Cir.), cert. denied, 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983), we adopted a six-year limitations period for actions under ERISA's civil enforcement provision, and held that "[a] plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, 'when there has been "a repudiation by the fiduciary which is clear and made known to the beneficiaries." ' " Id. (quoting Valle v. Joint Plumbing Indus. Bd., 623 F.2d 196, 202 n. 10 (2d Cir.1980) (quoting In Re Barabash, 31 N.Y.2d 76, 80, 286 N.E.2d 268, 270, 334 N.Y.S.2d 890, 893 (1972))). Defendants contend that Mrs. Larsen's claims are time-barred because her cause of action accrued either on September 21, 1977, the day Mr. Larsen applied for a pension, or on or about August 27, 1980, when "she was informed that she was entitled to 26 payments of pension benefits with the final payment due September 1, 1982." Neither of these dates, however, is appropriate to commence the running of the six-year limitations period.
 
 
 31
 September 21, 1977 is obviously inapplicable. The parties have stipulated that Mrs. Larsen was thoroughly unfamiliar with Mr. Larsen's pension arrangements while he was alive. In any event, Mrs. Larsen did not have any claim as Mr. Larsen's survivor while he was alive, so it was impossible for the Plan to repudiate her claim during that period.
 
 
 32
 Nor can August 27, 1980 be considered pivotal. A letter from the Plan to Mrs. Larsen bearing that date indicated that plaintiff would receive twenty-six monthly payments of $327.93. As plaintiff points out, however, that letter "did not explain what those payments represented, or that they were granted instead of life-time survivor's benefits," or that Mr. Larsen had waived such survivor's benefits. The letter was therefore not a clear repudiation of Mrs. Larsen's rights as a survivor of a Plan participant.
 
 
 33
 The earliest time at which such a repudiation can be said to have occurred was December 6, 1985, the date of the letter from the supervisor of the Plan's pension department that, in response to an inquiry made on Mrs. Larsen's behalf, detailed the Plan's position and stated: "All monies have been paid that are payable and there are no further monies due the widow of Mr. Robert P. Larsen." After a further exchange of correspondence between Mrs. Larsen's representatives and the Plan, the instant action was commenced on October 24, 1986. Since this was well within the six-year limitations period adopted by Miles, the district court properly declined to dismiss the action as barred by the statute of limitations.
 
 Conclusion
 
 34
 The summary judgment for defendants-appellees is reversed, the judgment denying defendants-appellees' motion to dismiss plaintiff's action as time-barred is affirmed, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 The cross-appeal was not necessary in this case, since a district court decision may be affirmed on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court. See Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987)