Catherine **LARSEN**, Plaintiff,

v.

**NMU PENSION PLAN TRUST OF THE NMU PENSION & WELFARE PLAN and Board of Trustees of the NMU Pension Trust of the NMU Pension & Welfare Plan, Defendants.**

**No. 86 Civ. 8215 (RPP).**

United States District Court, S.D. New York.

July 15, 1991.

Legal Services for the Elderly by Edgar Pauk, New York City, for plaintiff.

Phillips Cappiello Kalban Hofmann & Katz by Ned R. Phillips, New York City, for defendants.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action for survivor's benefits brought by the widow of a retired seaman in which she seeks declaratory and injunctive relief and damages for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended,* 29 U.S.C. § 1001 *et seq.* Plaintiff moved for summary judgment on the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendants cross-moved for summary judgment. The parties have consented to a final determination of the merits of this action on the record now before the Court in lieu of trial. For the reasons set forth below, judgment is entered for plaintiff.

## BACKGROUND

The facts of this case are summarized in *Larsen v. NMU Pension Trust of the NMU Pension & Welfare Plan,* 902 F.2d 1069 (2d Cir.1990), reversing the district court's grant of summary judgment to defendants and remanding. Briefly, when plaintiff's late husband ("the decedent"), a seaman, applied for his NMU pension in September 1977, he applied for a disability pension, adding the notation "OR HIGHEST $$ AVAILABLE." Joint Exh. 5. At that time he also executed a written waiver of a "Husband and Wife Pension," sometimes designated an "Employee and Spouse Pension." Under that option, the decedent would have received a lower monthly pension during his lifetime but plaintiff, upon his death, would have automatically received monthly payments of 50% of the decedent's monthly pension for the remainder of her life. Instead, decedent received monthly payments in the amount of $327.93 until his death on July 12, 1980. Because the NMU plan guaranteed "Five-Year Certain Benefits" regardless of when the retiree died, plaintiff, as decedent's beneficiary, received an additional 26 monthly payments in the same amount. The payments to plaintiff ended September 1, 1982.

The NMU Husband and Wife Pension option became effective January 1, 1976, prior to the decedent's retirement. Articles describing the Husband and Wife Pension appeared in the February 1976 and April 1976 issues of the *NMU Pilot,* decedent's union newspaper.[1] Plaintiff has stipulated

---

1. The February 1976 article stated:
   The law requires that effective January 1, 1976 every pension be paid in the form of a husband and wife pension unless the retiree specifically rejects this form of pension before its starting date.
   . . . .
   A husband and wife pension provides a lifetime pension for the seaman and also, upon his death, a lifetime pension for his surviving spouse.... Where a husband and wife pension is paid, the monthly amount paid to the seaman himself is reduced to provide for later payment to his surviving spouse.
   Joint Exh. 2 at 1. The April 1976 article explained:

   Any married seaman retiring on pension during or after 1976 will be paid a husband and wife pension unless he specifically rejects it. He is given the opportunity to choose either a regular pension or a husband and wife pension when he files a pension application. He does this by indicating his preference on a special form which he then signs. Once he begins receiving the type of pension he has requested, however, he cannot later switch to the other type.
   Joint Exh. 2 at 2.
   A third article appearing in the May 1976 *NMU Pilot* described pension payments available to the legal spouse of an unretired seaman

decedent brought home copies of the *NMU Pilot.* [Joint] Stipulations of Fact dated Oct. 4, 1988 ¶ 31.

Plaintiff claims that material misrepresentations made to decedent at the time he filled out his pension application caused the decedent to execute the waiver and therefore the waiver was not knowing and voluntary. The amended complaint states two causes of action: denial of survivor's benefits in violation of § 205 of ERISA, 29 U.S.C. § 1055, and breach of fiduciary duty in violation of § 404 of ERISA, 29 U.S.C. § 1104, by reason of failure to comply with statutory and administrative notice requirements. Plaintiff seeks an award of lifetime survivor's benefits retroactive to the date of her husband's death.

On October 4, 1988 the parties agreed to Stipulations of Fact and Joint Exhibits. On that basis, the district court, in an unpublished memorandum decision dated January 17, 1989, granted defendant's original motion for summary judgment and denied plaintiff's motion for summary judgment. Plaintiff appealed. After oral argument before the Second Circuit but prior to decision, the parties amended ¶ 11 of the joint Stipulations of Fact to state:

> At the time Mr. Larsen retired, an Employee and Spouse Pension was available to disability retirees, but then Pension Supervisor, Mr. Robert Meyer, advised disability pension applicants otherwise. However, Mr. Meyer has no specific recollection of what he may or may not have said to Mr. Larsen.

Based on the amended stipulation, the Second Circuit held:

> Since Mr. Larsen apparently selected the [Husband and Wife Pension] Option at the outset, but then reversed that election, a genuine issue of material fact exists as to whether the conceded misrepresentation by the Plan's representative induced Mr. Larsen's ultimate decision.

*Larsen,* 902 F.2d at 1073. The Second Circuit remanded, giving the parties an opportunity to present additional evidence in light of the post-argument amendment of

the stipulations of fact. *Id.* The parties stipulated to the following additional facts on December 10, 1990: (1) Joint Exhibit 3 entitled "Notice of New Death Benefit Protection for Active Seamen Who Have Attained Age 55 and Are Eligible for a Pension" was mailed to all eligible seamen reaching age 55 within two years of February 1976 for whom the Plan had a mailing address, including decedent; (2) decedent applied for his pension eight days after achieving full pension eligibility; (3) on October 11, 1977 NMU determined that the highest available pension payable to decedent was an "age," e.g., non-disability, pension of $327.93 per month; (4) decedent never submitted evidence of medical disability that would qualify him for a disability pension; and (5) if decedent had elected the Husband and Wife Pension, the amount payable to him with an age pension would have been $295.13 per month with $147.56 payable for life to plaintiff upon his death, whereas with a disability pension the amount payable to decedent would have been $205.00 per month with $102.50 payable to plaintiff for life.

## DISCUSSION

NMU's Husband and Wife Pension is a "qualified joint and survivor annuity" under ERISA. At the time decedent applied for his pension, ERISA provided:

**(a) Form of payment of annuity benefits**

If a pension plan provides for the payment of benefits in the form of an annuity, such plan shall provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity.

. . . .

**(e) Election to take annuity**

A plan shall not be treated as satisfying the requirements of this section unless, under the plan, each participant has a reasonable period ... before the annuity starting date during which he may elect in writing (*after having received a written explanation of the terms and*

---

who dies while pension-eligible. Joint Exh. 2 at 3. Plaintiff is not asserting any right to this

type of payment.

*conditions of the joint and survivor annuity and the effect of an election under this subsection* ) not to take such joint and survivor annuity.

29 U.S.C. § 1055 (1976) (emphasis added). Count 1 of the amended complaint alleges a violation of § 1055(e).

Regulations codified at 26 C.F.R. § 1.401(a)–11, effective April 1, 1977, govern qualified joint and survivor annuities. Subparagraph (c)(3)(i) relates to waivers such as the one decedent executed. Under that subparagraph, the plan is required to provide plan participants with written notice containing:

> (A) . . . a general description or explanation of the qualified joint and survivor annuity, the circumstances in which it will be provided unless the participant has elected not to have benefits provided in that form, and the availability of such an election;

and:

> (C) A general explanation of the relative financial effect on a participant's annuity of either or both elections as the case may be.

26 C.F.R. § 1.401(a)–11(c)(3)(i) (1977). Subparagraph (c)(3)(ii) provides that if a method other than mail or personal delivery is used to provide plan participants with such information, then:

> . . . it must be a method which is reasonably calculated to reach the attention of the participant on or about [the date which is 9 months before the participant attains normal retirement age] and to continue to reach the attention of such participant during the election period applicable to him for which the information is being provided (as, for example, by permanent posting, repeated publication, etc.).

26 C.F.R. § 1.401(a)–11(c)(3)(ii) (1977). Count 2 of the amended complaint alleges that by failing to comply with § 1.401(a)–11, defendants breached their fiduciary duties to plaintiff in violation of § 404 of ERISA, 29 U.S.C. § 1104 (1988).

*See Kaszuk v. Bakery & Confectionery Union*, 638 F.Supp. 365, 369 & n. 5 (N.D. Ill.1985) (ERISA's fiduciary requirements apply to notice-related questions) (collecting cases), *aff'd in relevant part*, 791 F.2d 548 (7th Cir.1986).

■ The record in this action is devoid of any evidence that defendants provided either (1) a written explanation of the terms of the Husband and Wife Pension as required by 29 U.S.C. § 1055(e) or (2) timely notice of such terms either by mail or personal delivery or by continuing publication notice as required under the regulations. The only notice mailed to the decedent, Joint Exhibit 3 sent in February 1976, governed a different pension option than the automatic Husband and Wife Pension at issue here.[2] The regulations required that any publication notice should have been calculated to reach the decedent on or about December 13, 1976, nine months prior to his attaining retirement age, and continually thereafter. However, the record is devoid of any notice other than the articles in the February and April 1976 issues of the *NMU Pilot* well prior to December 13, 1976.

■ Although violation of the regulations is sufficient to establish a breach of fiduciary duty under § 404 of ERISA, defendants are also liable for breach of fiduciary duty if they provided materially misleading information to decedent or if the information supplied was insufficient to enable him to make an informed decision. *See District 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F.Supp. 1468, 1480 (S.D.N.Y.1983). *See also Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir.1988) (collecting cases). Since the parties have stipulated that it was the general practice of Robert Meyer, NMU's Pension Supervisor, to inform pension applicants that a Husband and Wife Pension was unavailable to disability retirees, it is a fair inference that the decedent actually received such erroneous advice.[3] Defendants

---

**2.** Joint Exhibit 3 states "This protection is not automatic; you must elect it."

**3.** Decedent answered "yes" to the question, "Are you applying for a Disability Pension?" Joint Exh. 5.

cannot credibly argue that such a misrepresentation was immaterial.

Accordingly, plaintiff is entitled to judgment on both counts of the amended complaint and judgment will be entered on behalf of plaintiff.

■ On the issue of damages, plaintiff argues that NMU is not entitled to offset its liability for retroactive survivor's benefits by the amount decedent was "overpaid" by reason of having waived the Husband and Wife Pension and thus having received higher monthly payments for the five years in which benefits were paid.[4] Plaintiff relies on ERISA's "anti-alienation" provision, 29 U.S.C. § 1056(d). This rule prevents involuntary forfeitures of plan benefits such as by garnishment or attachment. The purpose of the anti-alienation rule is to protect an employee from his own financial improvidence in dealings with third parties. *See American Tel. & Tel. Co. v. Merry*, 592 F.2d 118, 124 (2d Cir.1979).

Adjusting plaintiff's damages to reflect the offset claimed by NMU would not run afoul of ERISA's anti-alienation rule. The goal of this action is to restore plaintiff to the position she would have been in had her husband not been induced by material misrepresentations to waive the Husband and Wife Pension. *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought ... by a participant or beneficiary ... to recover benefits *due him under the terms of his plan....*") (emphasis added). To disregard $5800 in benefits plaintiff would not have received but for her husband's ill-induced waiver would constitute a windfall to plaintiff at the expense of other Plan participants. Accordingly, (1) plaintiff is awarded damages in the amount of $147.56 per month retroactive to July 12, 1980 plus interest, offset by the amount

decedent was overpaid for having waived the Husband and Wife Pension[5] and (2) defendants are ordered to commence paying plaintiff survivor's benefits of $147.56 per month for the remainder of her life.

IT IS SO ORDERED.

---

4. The parties stipulated that had decedent chosen the Husband and Wife Pension, the age pension for which he qualified would have paid decedent $295.13 per month for the 34 months in which he received payments prior to death and would have paid plaintiff $147.56 per month thereafter. Thus, a rough calculation shows that in the five years in which benefits were actually paid, NMU's obligation under the Husband and Wife Pension (had it not been

waived) would have been approximately $13,-871. Because decedent waived the Husband and Wife Pension, NMU made 60 payments of $327.93 each, totalling $19,675. NMU claims that the difference, i.e., approximately $5800, amounts to an "overpayment."

5. Interest should also be attributed to the overpayment.