**Lynn E. ANWEILER, Plaintiff,**

v.

**AMERICAN ELECTRIC POWER SERVICE CORP., and AEtna Life Insurance Company, Defendants.**

**No. F 91–80.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

June 1, 1992.

Vincent J. Heiny, Haller & Colvin, Fort Wayne, IN, for plaintiff.

Steven L. Jackson, John Porter, Michael J. Nader, Baker & Daniels, Fort Wayne, IN, for defendants.

## ORDER

WILLIAM C. LEE, District Judge.

This matter is before the court on cross motions for summary judgment. Plaintiff, Lynn Anweiler (Mrs. Anweiler), filed her motion on February 3, 1992. Defendants, American Electric Power ("AEP") and AEtna Life Insurance Company (AEtna) responded to plaintiff's motion on February 27, 1992. Plaintiff replied on March 3, 1992. Defendants filed their motion for summary judgment on February 3, 1992. Plaintiff responded to defendant's motion on February 20, 1992. Defendants replied on March 2, 1992. For the following reasons, the plaintiff's motion for summary judgment will be DENIED and the defendants' motion for summary judgment will be GRANTED.

## Factual Background

On February 3, 1969, Indiana and Michigan Electric Company, a subsidiary of American Electric Power Service Corporation, hired Larry H. Anweiler ("Mr. Anweiler"). Pursuant to a life insurance beneficiary designation dated April 30, 1979, Mr. Anweiler named Mrs. Anweiler as the primary beneficiary on a $37,000.00 of group life insurance policy available through his employment with AEP. On June 12, 1980, Mr. Anweiler ceased working for AEP as a result of Hodgkin's disease which caused him to be permanently disabled.

Effective October 4, 1980, after exhausting his vacation and sick time, Mr. Anweiler began receiving long-term disability benefits in the amount of $799.07 per month under the long-term disability plan ("LTD Plan") administered by AEP and insured by AEtna. The LTD Plan provided for monthly benefits equal to 50% of Mr. Anweiler's pay, less income received from other sources, including social security payments.

In April of 1981, Mr. Anweiler was awarded social security disability benefits, retroactive to December, 1980, and he so informed the defendants. On May 26, 1981, AEtna wrote Mr. Anweiler explaining that his primary social security benefits were taken into consideration for computing his long-term disability benefits. As a result, Mr. Anweiler's monthly LTD Plan benefits were reduced accordingly and AEtna recovered the overpayment to date.

On August 11, 1981, Mr. Anweiler executed a Reimbursement Agreement [1] which des-

---

1. The Reimbursement Agreement states as follows:

This will acknowledge that I am familiar with and understand the provisions of group policy R–2068, cft 310–42–5118 issued to AMERICAN ELEC. PWR. by AEtna Life Insurance Company hereinafter referred to as AEtna to the effect that the amount of any benefits payable for any month or partial month of total disability shall be reduced by the amount of any benefits I receive under the United States Social Security Act as well as certain other income sources as enumerated in said group policy. I also understand that such Social Security Benefits with respect to my eligible dependents as well as myself may be included to the extend provided by said group policy benefits must be reduced.

I request AEtna to postpone making any reduction in the amount of my group policy benefits

ignated AEtna as primary beneficiary under Mr. Anweiler's life insurance benefit provided by AEP ("Life Plan"), to the extent of any LTD Plan overpayment owing to AEtna. In February 1982, Mr. Anweiler was informed by the Social Security Administration that his benefits would be terminated due to a finding that he was no longer disabled. On April 16, 1982, AEtna wrote to Mr. Anweiler to inform him that his benefits would increase to $799.07 per month as a result of the termination of his social security benefits and the repayment of the initial overpayment. Mr. Anweiler successfully appealed the determination and his benefits were reinstated retroactive to February, 1982. Mr. Anweiler, however, continued to receive both his full social security benefits and his full LTD Plan benefits because he failed to report the resumption of his benefits, thus avoiding a reduction of his benefits as per the terms of the LTD Plan. As a result, Mr. Anweiler was overpaid $47,588.69 by AEtna. At the time of his death on April 9, 1989, the outstanding balance was $46,227.01. These overpaid monies were used to pay family expenses.

On April 24, 1989, Mrs. Anweiler filed a death claim form for the proceeds from the Life Plan. However, AEtna, as designated beneficiary under the Life Plan pursuant to the executed Reimbursement Agreement, received and retained the $37,000.00 life insurance benefit. On April 27, 1989 and May 1, 1989, AEtna informed Mrs. Anweiler that as a result of the overpayment, AEtna would retain the funds under the Reimbursement Agreement.

On May 10, 1989, plaintiff made a demand for payment. The demand was reviewed by AEtna and AEtna affirmed its denial of benefits to Mrs. Anweiler. Approximately one year later, Mrs. Anweiler demanded payment again. AEtna again reviewed Mrs. Anweiler's demand and again denied Mrs. Anweiler benefits. On April 4, 1991, Mrs. Anweiler filed suit in this court alleging that defendants breached their fiduciary duty to Mr. Anweiler and, as such, she is entitled to equitable relief. Alternatively, Mrs. Anweiler maintains state insurance law prohibits AEtna from being a beneficiary because they are the "employer." Finally, Mrs. Anweiler seeks penalties under 29 U.S.C. § 1132(c) of $100.00 a day for defendants' failure to provide a full and fair review or specific reasons for the denial of her claim.

### Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable con-

until such time as I begin to receive Social Security or other applicable income benefits. I agree to notify AEtna promptly as soon as I am awarded Social Security or other applicable income benefits and to refund AEtna any amount it may pay to me under this agreement in excess of the amount I would have received under said group policy if the above described reduction were made as of the date the Social Security or other applicable income benefits are deemed to commence. In consideration of AEtna granting my request, I hereby assign, transfer and set over to AEtna, to the extent of

any excess so paid under this agreement, all rights, benefits and advantages had or derived from (a) any insurance benefits hereafter becoming payable to me or with respect to me under the group policy, (b) to the extent permitted by law, any monies payable to me by AEtna for any reason whatsoever and (c) hereby designate AEtna as creditor beneficiary under any group life policy issued by AEtna and insuring my life to the extent of the amount of any overpayment which may exist at the time of my death.

clusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*, 477 U.S. at 251, 106 S.Ct. at 2512; *In re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir.1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the non-moving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317 (7th Cir.1992), quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir.1988); *Guenin v. Sendra Corp.*, 700 F.Supp. 973, 974 (N.D.Ind.1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249–251, 106 S.Ct. at 2511.

■ Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510. Irrelevant or unnecessary facts do not preclude summary judgment

even when they are in dispute. *Id.* The issue of fact must be genuine. Fed.R.Civ.P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356; *First National Bank of Cicero v. Lewco Securities Corp.*, 860 F.2d 1407, 1411 (7th Cir.1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252, 106 S.Ct. at 2512.

### Employee Retirement Income Security Act (ERISA)

■ ERISA is a remedial statute designed to protect the interests of employees in pension and welfare plans. *See Shaw v. Delta Airlines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The purpose is achieved through requirements for reporting, disclosure, participation rights, vesting of rights to benefits funding, fiduciary responsibilities and claim procedures. *See* 29 U.S.C. §§ 1021–1145.

■ ERISA creates federal causes of action for recovery of benefits due under pension and welfare plans, *see* 29 U.S.C. § 1132(a)(1)(B), and for breach of fiduciary duty by plan fiduciaries, *see id.*, §§ 1109, 1132(a)(2). ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans. Instead Congress intended the courts, borrowing from state law where appropriate, and guided by the policies expressed in ERISA and other federal labor laws, to fashion a body of federal common law to govern ERISA suits. *See Cummins v. Briggs & Stratton Retirement Plan*, 797 F.2d 383 (7th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 648, 93 L.Ed.2d 703 (1986).

### 29 U.S.C. § 1104 Fiduciary Duties

Plaintiff maintains that defendants were liable for a breach of fiduciary duty in viola-

tion of 29 U.S.C. § 1104[2], by providing Mr. Anweiler with materially misleading information. Plaintiff contends that not telling Mr. Anweiler that the Reimbursement Agreement was revocable and that Mr. Anweiler was not required to sign the agreement denied Mr. Anweiler the opportunity to make an informed decision. *See generally, Larsen v. NMU Pension Plan Trust,* 767 F.Supp. 554, 557 (S.D.N.Y.1991).

Defendants argue that the Reimbursement Agreement was a contract with Mr. Anweiler in which AEtna promised to postpone making any reduction in the amount of long term disability benefits until Mr. Anweiler receive such benefits. This provision, defendants argued, was to avoid the inevitable situation where although Mr. Anweiler was entitled to social security benefits, he was awaiting the results of the bureaucratic procedure to determine the amount of benefits or its refusal to pay. Instead of estimating the amount of social security benefits Mr. Anweiler would be entitled to receive and offsetting the plan disability benefits by the amount, prior to his actual receipt, AEtna agreed to postpone such reduction in consideration for being named beneficiary under Mr. Anweiler's life insurance plan.

In support of their position, the defendants brought to the court's attention the unpublished opinion in *O'Connell v. Prudential Insurance Company of America,* No. 82–8078–Z, 1984 WL 14109 (E.D.Mass. Nov. 15, 1984). In *O'Connell,* the plaintiff commenced receiving disability payments on June 20, 1979, under the plan of his employer, Prudential. Although plaintiff had already begun receiving benefits, Prudential sent him a letter on December 10, 1979, explaining that he might be entitled to social security benefits and that he should apply. Prudential also informed plaintiff that it would reduce his disability payments if he did not apply but if he did apply, it would postpone reducing his benefits during the pendency of the application. To confirm this arrangement, Prudential requested that plaintiff sign a reimburse-

ment agreement which permitted Prudential to offset future disability benefits by any retroactive social security award. Plaintiff signed the agreement on January 17, 1980.

Plaintiff was granted social security benefits retroactive to the date of his disability—resulting in a lump sum payment. Prudential began to offset current benefits because of the overpayment which resulted from retroactive social security benefits. The plaintiff sued alleging, among other things that:

1. The summary plan description (SPD) did not reference the possibility of reimbursement because of a retroactive award.

2. Prudential violated a Massachusetts statute forbidding the seizure, taking or appropriating benefits by legal or equitable process; and

3. There was a lack of consideration to support the reimbursement agreement.

The *O'Connell* court acknowledged that the SPD did not mention reimbursement in the event of a retroactive award. However, the court noted that Prudential could have reduced his benefits, even if he was not yet receiving them under the terms of the plan. The court held that the fact that Prudential chose to continue payments without reduction does not change Prudential's rights under the Plan. The court held that plaintiff's argument was without merit because it would have entitled plaintiff to double benefits which was "unreasonable."

The court dismissed the plaintiff's argument that defendant violated a Massachusetts statute which protected benefits from equitable or legal process. The court held that Prudential's action was not a judicial process, and thus fell outside the realms of the statute. The court also held that there was adequate consideration to support the reimbursement agreement because Prudential agreed not to reduce benefits immediately.

**2.** 29 U.S.C. § 1104 provides:

(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

(B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

■ While this court agrees that the factual circumstances in *O'Connell* and in the instant case are similar, there are fundamental differences in the reimbursement agreements that command a different result. The defendants' "right" to reduce plaintiff's long term disability benefits prior to the actual receipt of social security benefits does not exist. Unlike the Plan in *O'Connell*, the LTD Plan in the instant case does not state that a monthly benefit may be reduced by other income benefits that an employee is entitled to but is not actually receiving. The AEP LTD Plan states that the LTD benefits "shall be fifty (50%) of the employee's monthly rate of basic earnings if no other income benefits *are payable* for the given monthly period" and that "if other income benefits *are payable* for a given monthly period, the amount of monthly benefits payable under this policy for the given period shall be an amount equal to the excess. . . ." Group Insurance Policy Long Term Disability Benefits p. 6–B (emphasis added). "Other income benefits" are defined and reference is made only to "income received" and "benefits payable to the employee or spouse." *Id.* at 6–C. With respect to lump sum awards, the LTD Plan provided that "any other single sum payment (including any periodic payments which the individual could have elected to receive in any single sum) shall be allocated in its entirety by the Insurance Company, in equal amounts, to sixty (60) monthly periods, and may also be allocated retroactively by the Insurance Company if received pursuant to a retroactive award." *Id.*

■ Thus, this case is distinctly different from the *O'Connell* case in that the defendants did not forego any right they had pursuant to the LTD Plan in consideration of the plaintiff making AEtna a creditor beneficiary. As such, there was no consideration to support the Reimbursement Agreement. Furthermore, the defendants failed to inform Mr. Anweiler that the Reimbursement Agreement was revocable after he signed it.

*29 U.S.C. § 1109 Liability for Breach of Fiduciary Duty*

■ Notwithstanding defendant's breach of fiduciary, plaintiff's claim for recovery directly from the fiduciary under 29 U.S.C. § 1109 must fail. Individual liability for breach of fiduciary duties under ERISA is set forth in 29 U.S.C. § 1109, which states in pertinent part:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter, shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore such plan any profits of such beneficiary which have been made through use of assets of the plan by the fiduciary and shall be subject to such other equitable or remedial relief as the court deem appropriate, including removal of such fiduciary.

The Supreme Court has held that a beneficiary may bring an action against a fiduciary for violation of fiduciary duty under § 1109, but any recovery for such violation inures to the benefit of the Plan as a whole. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The Court specifically stated:

It is of course true that the fiduciary obligations of plan administration are to serve the interest of participants and beneficiaries and, specifically, to provide them with benefits authorized by the plan. But the principal statutory duties imposed on the trustees relate to the proper management, administration, and investment of fund assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest.

*Id.*, at 142, 105 S.Ct. at 3090. The "entire text of § 1109 persuades us that Congress did not intend that the section authorize any relief except for the plan itself." *Id.*, at 144, 105 S.Ct. at 3091.

The Court also discussed the "six carefully integrated and enforcement provisions found in § 502(a) of [ERISA]." *Id.*, at 146, 105 S.Ct. at 3092. The Court described the "panoply of remedial devices" a plaintiff, like Mrs. Anweiler, would have at her disposal should an administrator find an individual not entitled to benefits. *Id.* The Court stated:

To recover the benefits due her, she could have filed an action pursuant to § 502(a)(1)(B) to recover accrued benefits, to obtain a declaratory judgment that she is entitled to benefits under the provisions of plan contract, and to enjoin the plan administrator from improperly refusing to pay benefits in the future. If the plan administrator's refusal to pay contractually authorized benefits had been willful and part of a larger systematic breach of fiduciary obligations, respondent in this hypothetical could have asked for the removal of the fiduciary pursuant to §§ 502(a)(2) and 409.

*Id.*, at 147, 105 S.Ct. at 3093. It is clear that Mrs. Anweiler's complaint is not for benefits she failed to receive under the LTD Plan, but for having to reimburse the LTD Plan for benefits improperly paid to her husband. Based upon the foregoing, it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to recover directly from the fiduciary.

*29 U.S.C. § 1132(a)(3) Other Equitable Remedies*

■ Plaintiff also seeks to impose a constructive trust on the death benefits using the "other equitable remedies" provision of § 1132(a)(3). Section 1132(a)(3) provides that:

A civil action may be brought—

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate relief (i) to redress plan or (ii) to enforce any provisions of this title or the terms of the plan.

In *Sokol v. Bernstein*, 803 F.2d 532 (9th Cir.1986), the Ninth Circuit interpreted the Supreme Court's holding in *Russell* and extended its application to § 1132(a)(3). In *Sokol*, the plaintiff sought extra contractual damages under § 1132(a)(3), which permitted participants to seek other "equitable relief." The Ninth Circuit noted that for breach of fiduciary duties under § 1109, ERISA grants "no private right of action by a beneficiary qua beneficiary; rather it accords beneficia-

ries the right to sue on behalf of the entire plan if a fiduciary breaches the plan's terms." *Id.*, at 536. Thus, relying on the logic of the *Russell* decision and its decision in *Hancock v. Montgomery Ward Long Term Disability Trust*, 787 F.2d 1302 (9th Cir.1986), the Ninth Circuit held that extra contractual damages under § 1132(a)(3) were unavailable. Therefore, pursuant to the Supreme Court's holding in *Russell*, Mrs. Anweiler can only hope to force AEtna to restore the plan to its prior position—recovery for herself under § 1132(a)(3) is prohibited. Accordingly, summary judgment must be denied with respect to plaintiff's ERISA claims.

*State Law Claim*

Next, plaintiff attempts to collect individually on the death benefits via a state law claim. This claim, however, lacks merit and must fail.

As an preliminary matter, the interaction between ERISA and state laws should be set forth. ERISA comprehensively regulates, among other things, "employee benefit plans that 'through the purchase of insurance or otherwise' provide medical, surgical, or hospital care in the event of sickness, accident, disability, or death." *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987) (citing ERISA § 3(1), 29 U.S.C. § 1002(1)). In order to eliminate the "threat of conflicting or inconsistent state and local regulation or employee benefit plans," ERISA includes substantive and enforcement provisions which Congress "intended to preempt the field for Federal regulations." 120 Cong.Rec. 29,933 (1974) (statement of Sen. Williams), quoted in *Pilot*, 481 U.S. at 46, 107 S.Ct. at 1552.

ERISA's basic preemption rule, contained in Section 514(a) of the statute, is direct and broad: if a state law relates to an employee benefit plan regulated by ERISA, ERISA preempts the state law.

Except as provided in subsection (b) of this section, the provisions of this title and title IV shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b).

29 U.S.C. § 1144(a). For purposes of its preemption clause, ERISA defines "State law" to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

Section 514(b) of ERISA excepts from preemption, state laws regulating insurance. Thus, since the outcome of this matter is based upon state insurance laws, the issue is determined by Ohio statutes governing insurance.[3]

▇▇▇ Plaintiff argued that state insurance laws prohibit AEP and AEtna from being a beneficiary. In a very novel argument, plaintiff contends that AEtna is the alter ego of AEP and therefore as "employer," AEtna would be barred from being the beneficiary of Mr. Anweiler's insurance proceeds. It is plaintiff's position that by virtue of how the life insurance proceeds paid to AEtna were credited to a trust account used by AEP to fund the LTD Plan, the beneficiary of the life insurance proceeds was the employer, AEP. Thus, the Reimbursement Agreement would be violative of the statute.

The only case plaintiff presented that addressed the "alter ego of the employer" theory, the Fifth Circuit held that no such relationship existed. *See Bohannon v. Manhattan Life Ins. Co.*, 555 F.2d 1205 (5th Cir. 1977). In *Bohannon*, the employee named other shareholders as beneficiaries and his widow claimed that the shareholders were the alter ego of the employer. Thus, the beneficiary designation naming the shareholders was violative of the Georgia Code which provided that group life insurance must be ". . . for the benefit of persons other than the employer." *Id.*, at 1208. The Fifth Circuit held that using the ordinary meaning of employer, it was clear that the corporation, not the shareholders was the employer of Mr. Bohannon. *Id.* The court found no facts in the case to indicate that the corporation should be treated as the alter ego of the shareholders, so that the corporate form should be ignored and the shareholders treated as the employer. *Id.* The share-

holders in *Bohannon*, as does AEtna in the instant case, have none of the legal ties associated with an employee-employer relationship. AEtna was not responsible to Mr. Anweiler for any of the employer obligations, such as his salary, fringe benefits or the payment of premiums on the group policy in question. *See Id.*

Although there was a factual dispute as to whether the life insurance proceeds were credited to an AEP controlled trust account (defendants filed amended interrogatories claiming AEtna paid Mr. Anweiler's LTD Plan benefits out of its own funds and not out of the trust account and AEtna retained Mr. Anweiler's life insurance proceeds to reimburse itself for the LTD overpayment), the court would not find the resolution of this fact to be genuine issue of material fact for purposes of summary judgment. The facts of the case simply do not support the argument that AEtna is an employer within the meaning of the statute.

*Statutory Penalties*

Plaintiff also seeks penalties under 29 U.S.C. § 1132(c). Section 1132(c) provides that a court in its discretion may impose a $100.00 a day penalty for failure to provide information to a participant or beneficiary. Further, plaintiff contends that plaintiff was never allowed a full and fair review of the denial of her claim pursuant to 29 U.S.C. § 1133 and as such she should be awarded $100.00 per day since April 1989.

▇▇▇ Section 1132(c) of ERISA states that:

Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this title to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonable beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion

---

3. Ohio Revised Code 3917.01 provides that:
Group life insurance is that form of life insurance covering not less than ten employees . . .

and insuring only all of his employees or all of any classes thereof, . . . for the benefit of persons other than the employer.

be personally liable to such participant or beneficiary in the amount of $100.00 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c).

Section 3(16) of ERISA defines the term "administrator" as:

(i) the person specifically so designated by the terms of the instrument under which the plan is operated;

(ii) if an administrator is not so designated, the plan sponsor; or

(iii) in the case of a plan for which an administrator is not so designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribed.

29 U.S.C. § 1002(16)(A). Defendant, AEP admitted they are the plan administrator of the Life Plan, consequently, the imposition of this penalty is not effective against defendant, AEtna. Since AEtna is clearly not the administrator, they are entitled to summary judgment with respect to this issue.

 With regard to AEP, however, section 1132(c) is applicable. The court has found no consideration for the Reimbursement Agreement and that AEP failed to inform Mr. Anweiler that Reimbursement Agreement was revocable after he signed it. Thus, AEP may be liable for penalties under § 1132(c). However, this court, in its discretion, rejects plaintiff's claim for the statutory penalty.

The imposition of a penalty would result in a further windfall for Mrs. Anweiler (the policy proceeds at issue leave AEtna $10,000 short of being completely reimbursed for the LTD overpayment) and this court will not sanction such an unfair result. Mrs. Anweiler, as a member of the Anweiler household, improperly received and benefitted from payments made in error by AEtna. Mrs. Anweiler was aware of the earlier reduction of Mr. Anweiler's benefits by AEtna on May 26, 1981 and knew that the benefits under the LTD Plan would be reduced when Mr. Anweiler's social security benefits were resumed. Thus, the court in an exercise of its discretion, denies plaintiff's claim for penalties under 29 U.S.C. § 1132(c).

*Award of Attorney Fees*

 Section 502 of ERISA, 29 U.S.C. § 1132(g)(1), states that in any action to recover benefits due under a Plan, to enforce rights under the Plan or to clarify rights to future benefits under a Plan "the court in its discretion may allow a reasonable attorney's fees and costs of action to either party." In *Janowski v. International Brotherhood of Teamsters Local No. 710*, 673 F.2d 931 (7th Cir.1982), *vacated on other grounds*, 463 U.S. 1222, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), the Seventh Circuit articulated a five-factor test to be employed in awarding attorney's fees under ERISA:

(1) The degree of the opposing parties' culpability or bad faith; (2) The ability of the opposing parties to satisfy an award of attorney's fees; (3) Whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) Whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) The relative merits of the parties positions.

*Id.* at 940.

In applying the five-factor test, this court finds that the plaintiff is not entitled to attorney fees. The court finds that the defendants did not act in bad faith. The Reimbursement Agreement misrepresented the provisions of the LTD Plan, however, this misrepresentation was the result of inept drafting of the LTD Plan, not bad faith on behalf of the defendants. The LTD Plan failed to properly distinguish between benefits a beneficiary was entitled to and benefits the beneficiary actually received. Additionally, plaintiff's request for attorney fees is part of her continued effort to recover a windfall from the defendants. Moreover, although the disposing of this motion consumed a significant amount of the court's valuable time, there was no significant question of law that needed to be resolved. Accordingly, plaintiff's claim for attorney fees is denied.

*Conclusion*

The plaintiff's motion for summary judgment is hereby DENIED and the defendants' motion for summary judgment is hereby GRANTED.