Joseph **DANIS**

v.

**CULTOR FOOD SCIENCE, INC.,** **Health and Welfare Plan for Employees of Cultor U.S., Inc.**

**No. 3:99CV1287 JBA.**

United States District Court, D. Connecticut.

March 26, 2001.

Lloyd L. Langhammer, Mark E. Block, O'Brien, Shafner, Stuart, Kelly & Morris, P.C., Norwich, CT, for Plaintiff.

Loraine M. Cortese–Costa, Durant, Nichols, Houston, Hodgson & Cortese–Costa PC, Bridgeport, CT, Vedder, Price, Kaufman & Kammholz, New York City, for Defendants.

*RULING ON OBJECTIONS TO REC-OMMENDED RULING ON MOTION FOR SUMMARY JUDGMENT*

ARTERTON, District Judge.

## I. INTRODUCTION

Plaintiff Joseph Danis, a former employee of defendant Cultor Food Science Inc. ("Cultor"), claims that he is entitled to retiree medical benefits from defendant, notwithstanding the undisputed fact that Cultor has not offered any retiree medical benefits since 1997, because of representations allegedly made to him when he was hired and when he negotiated a termination severance agreement. He has sued Cultor and the Health and Welfare Plan for Employees of Cultor U.S., Inc. ("the Cultor Plan") seeking clarification of his right to benefits under the Plan and equitable relief for a breach of fiduciary duty under ERISA §§ 502(a)(1)(B) and 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3),[1] based on Cultor's intentional and/or negligent misrepresentations, and claiming that defendant is estopped from denying benefits.

Cultor and the Cultor Plan moved for summary judgment on all counts, arguing (1) that as Cultor never adopted a retiree welfare benefit plan, there can be no ERISA jurisdiction over plaintiff's claims for benefits and moreover, that plaintiff lacks standing under ERISA because he is not a "participant" of the Cultor Plan; (2) that plaintiff cannot recover benefits for a breach of fiduciary duty under § 1132(a)(3) where he has a claim under § 1132(a)(1)(B) for benefits; (3) that the express terms of plaintiff's employment contract with Cultor establish that he is not entitled to retiree medical benefits; (4)

---

**1.** Although plaintiff's second amended complaint claims to be seeking equitable relief for the alleged breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) and clarification of his right to future benefits under "11 U.S.C. § 1132(a)(1)(3)," there is no such section, and Counts I, II and IV of his complaint are construed as seeking relief under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3).

that plaintiff's estoppel claim must fail for lack of evidence that defendant induced any action on plaintiff's part and that plaintiff reasonably relied on the representations allegedly made to him; and (5) that plaintiff is bound by the release agreement he signed after his termination because his claims are not properly brought under ERISA.

The motion for summary judgment [Doc. # 39] was referred to Magistrate Judge Margolis, who issued a recommended ruling on December 8, 2000 [Doc. # 52] granting in part and denying in part defendants' motion for summary judgment. Defendants have objected to that portion of the recommended ruling denying their motion for summary judgment.[2] When timely objection has been made to a magistrate judge's recommended ruling, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. B. 72(b). The district court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." *Id.* For the reasons discussed below, defendant's objections to the Magistrate's ruling are sustained and summary judgment is granted in favor of defendants.

## II. FACTUAL BACKGROUND

Joseph Danis worked for Pfizer, Inc. for twenty-eight years until January 26, 1996, when he became employed by defendant Cultor after it purchased Pfizer's Food Science Group, where plaintiff was the director of the technical services division.

Negotiations between Pfizer and Cultor for the sale of the Food Science Group began in early 1995. In connection with the sale, plaintiff attended two informational meetings held jointly by Pfizer and Cultor in December 1995, for area managers, and in January 1996, for employees from technical service and research and development. Danis' notes from the December 1995 meeting contain the following: "Retiree Life & Medical (could be a benefit?) > 40" and his notes from the January 1996 meeting indicate: "Medical Coverage > 40 years > 10 years of service, vested when retired from Cultor even if brief employment." Danis Aff. ¶¶ 4–5, Ex. A. These notes do not indicate any source for this information, and Danis stated in his deposition that someone who he "believes [ ] was not a Cultor person," represented to him that he would be eligible for retiree medical benefits at age fifty-five at the January 1996 meeting. Danis dep. at 29–30. Danis also stated that there was no discussion of limiting eligibility for retirement benefits to those employees who worked a certain number of years at Cultor at the January 1996 meeting. *Id.* Plaintiff claims that he asked his good friend Bart Finegan, the vice president of employee resources at *Pfizer* at that meeting, " 'Bart, this means that if I transfer to Cultor, I'm age forty now, greater than ten years, so I'm going to qualify, and that even if I work one nanosecond' ... that I would qualify at age 55 for Cultor retiree medical benefits." In response, plaintiff claims Finegan said yes and grinned. *Id.* at 32. Danis does not recall whether any Cultor employees attended that meeting. *Id.* at 66.[3] For purposes of this motion,

---

**2.** The Magistrate's recommended ruling granted defendants' motion for summary judgment as to plaintiff's estoppel count (Count III), and Danis has not objected. After review, the recommended ruling is adopted as to Count III.

**3.** Plaintiff also submitted an affidavit from another former Pfizer employee who trans-

Cultor accepts this account of plaintiff's conversation with Finegan. *See* Doc. # 40, at p. 22.

Apart from the nanosecond statement and Finegan's smile, however, nothing was said to Danis about the elimination of the Pfizer "55+15 after 40 Rule"[4] for retiree benefits at Cultor before he accepted employment with Cultor. Danis dep. at 72. Plaintiff claims that although he believes that a general representation was made by Cultor that "the benefits would be at least what we have from Pfizer," he does not recall "Mr. Lauren [the president of Cultor] or anyone else from Cultor mentioning anything specifically about retiree medical coverage" from October 1995 through the closing date. *Id.* at 67–68. Plaintiff also understood in 1996 that under the terms of the sale, Cultor was obligated to provide "comparable" benefits for only three years, although he did not believe the three year period applied to retiree medical benefits. *Id.* at 69–70, 72, 118. As of the date plaintiff left Pfizer in 1996, he would not have qualified for Pfizer Plan retiree medical coverage because he was only fifty years old and had only ten years of service after reaching age forty.

The Pfizer Plan expressly reserved Pfizer's right to "change or discontinue the Plan at any time and to require or adjust participant contributions for both active and retired employees." *Id.* at D0003. The Pfizer Plan further provided that "[m]edical benefits provided to retirees under the Pfizer Medical Plan are not intended to serve as deferred income, and continuation of such benefits is subject to the [Employee Compensation and Management Development Committee] of the Company's Board of Director's right to terminate the Plan, modify the Plan provisions and require participant contributions." *Id.* at D0030.

Despite this clear language, Danis nonetheless believed, and apparently continues to believe, that he was entitled to lifetime medical benefits from Pfizer upon reaching the "magic age" of fifty-five. *Id.* at 103, 107. In an affidavit submitted in opposition to summary judgment, Danis claims that despite the reservation of rights in the Pfizer Plan, he "had always understood the Pfizer retirement medical benefits to be for one's lifetime. When Cultor promised to provide comparable benefits to those provided by Pfizer, [he] understood those benefits to include retirement medical benefits, and that those benefits would have been available for [his] lifetime, as they would have at Pfizer." Danis Aff. ¶ 8, Pl.'s Ex. 3.

---

ferred to Cultor, Thaddeus Blake, Pl.'s Ex. 13. Blake attended meetings held by Cultor and Pfizer in New York where "it was represented that Cultor would provide retiree medical benefits to employees over 40 years of age with greater than 10 years of service, and that those employees would qualify for benefits at age 55." Blake further states that he "did not attend any meetings in Groton, Connecticut, although [he is] aware that similar meetings took place there." *Id.* ¶ 8. Blake did not recall the names of the employees who made the representations, although he "know[s] that representations were made by Cultor management representatives." *Id.* ¶ 9. However, because plaintiff has provided no evidence that Finegan's statement was made in the presence of *Cultor* employees who would be expected to have corrected material inaccuracies or misrepresentations, it is hard to see how Blake's recollection of representations made by Cultor representatives at the New York meetings is relevant to plaintiff's claims.

4. From 1994 onward, Pfizer had provided retiree medical benefits under the Pfizer Medical Plan (the "Pfizer Plan") to those employees who retired at or after age 55 with at least fifteen years of service after they turned 40 (the "55+15 after 40 Rule"). *See* Def.'s Ex. E at D0022.

At one of the transition meetings in the December 1995—January 1996 time frame, Cultor distributed a brochure called "Questions and Answers About Your Benefits" ("Q & A Brochure"), Pl.'s Ex. 4, to Pfizer Food Science Group employees to address their questions about the transition. It informed them that "[t]here will be many similarities and a few changes in your benefits ... It is possible that there may be some change in some of the details or limits of the various coverages." *Id.* In a section titled "What benefits are changing?" the following paragraph appears:

> Employees under age 40 and those who are 40 or older with under ten years of service will no longer be covered by retiree medical and life benefits. Employees who are age 40 and have completed 10 or more years of service with Pfizer as of the Closing Date will continue to be eligible to receive retiree medical and life benefits.

*Id.* Danis does not recall receiving this document. Danis dep. at 74.

In December 1995, while the Pfizer/Cultor negotiations were on-going, plaintiff expressed an interest in joining Cultor, and began negotiating the terms of his employment agreement. On December 11, 1995, Haken Lauren, the president of Cultor, sent a draft of the employment agreement to Danis with a cover letter indicating that "your salary will continue at its present level and your other benefits will be *comparable* to those you presently enjoy." Def.'s Ex. F, D0173 (emphasis added). Danis consulted an accountant and requested various changes during the negotiation of the agreement, including a revision to obligate Cultor to provide the benefits promised in the cover letter. *See* Def.'s Ex. G at 0184. He was only partly successful in obtaining this revision and

the revised employment agreement Danis signed on February 13, 1996 contains no mention of retiree medical benefits, providing instead that Danis is "entitled to participate in all Company benefit plans for Company employees as described in the Purchase Agreement." Def.'s Ex. I, § 2(c). It also contains the following merger clause: "This Agreement contains the entire agreement and understanding of the parties with respect to the subject matter hereof, supersedes all prior agreements and understandings with respect thereto and cannot be modified, amended, waived or terminated, in whole or in part, except in writing signed by the party to be charged." *Id.* § 9.

Under the Purchase Agreement referenced in the employment agreement, Cultor agreed to provide medical benefits to former Pfizer Food Science Group employees comparable to those formerly provided by Pfizer for three years, after which Cultor agreed to provide these employees with benefits which were no less favorable than those provided to similarly situated Cultor employees, who never have been provided retiree medical benefits. *See* Def.'s Ex. I. The Agreement provided that Pfizer would provide medical benefits to transferring employees under the Pfizer Plan through the end of 1996, including providing retiree medical benefits to transferees who met the terms of the 55 + 15 after 40 Rule at the date of purchase. *Id.* Cultor in turn agreed to provide retiree medical benefits to those transferees who were at least forty years old with at least ten years of service as of the date of purchase (the "40 + 10 Rule"), and who met the terms of the 55 + 15 after 40 Rule within the next three years.[5] *Id.* Cultor reserved the right to modify or discontinue retiree medical coverage for these employ-

---

**5.** As no Pfizer transferee met these terms within the three year comparability period,

Cultor never developed a retiree medical benefits plan.

ees after the three year comparability period expired. *Id.* Plaintiff did not qualify for Pfizer coverage as of the purchase date or for Cultor coverage during the three year extension period.

It is undisputed that Danis did not ask for or receive a copy of the Purchase Agreement before he signed the Employment Agreement and he was unaware of the terms of the Purchase Agreement prior to filing this lawsuit. Danis dep. at 49. He apparently "assume[d] that certain things that [he] had discussed with Finegan, retiree medical benefit, would also" be included, despite the merger clause. *Id.* at 46, 52. However, he admits that Finegan never told him that retiree medical benefits were included in the Purchase Agreement, and that he did not ask Cultor to clarify which benefits were described in the Purchase Agreement because the "discussions with Finegan January 17th had given [him] a good feeling on certain things, and both the general presentation and the side discussion with Finegan … gave [him] a feeling of comfort." *Id.* at 49.

Approximately two months after Danis transferred from Pfizer, he was terminated by Cultor. Shortly thereafter, on March 18, 1996, Danis wrote an email to Finegan, who had since transferred to Cultor to be vice president of employee resources, asking for clarification of certain details of his termination, including the following question: "Regarding retirement medical coverage; based on the meetings it is my interpretation that I am eligible for Cultor retirement medical coverage since I was >40 and >10 years service at the close and not excluded that I would be eligible for this coverage with the magic retirement age of 55." Pl.'s Ex. 5, at 0025. Finegan responded on March 29, 1996 that "You will be eligible for retiree medical insurance when you achieve age 55. The specific terms and conditions of this Plan have not yet been decided, and we can make no representation concerning the terms, conditions or coverage of such plan." Pl.'s Ex. 6 at 0021. On April 1, 1996, Danis wrote to Finegan again, thanking him for confirming his eligibility for Cultor retiree medical insurance at age fifty-five, and asking "that some guarantee be built in to assure lifetime availability" in light of his concerns about Cultor's "long-term viability." Pl.'s Ex. 7, at 0023. Finegan wrote back on April 19, 1996 informing Danis that "I cannot, at this time, comment on the lifetime availability of any benefits." Pl.'s Ex. 8, at 0019.

In exchange for severance pay totaling $330,780.29, plaintiff executed a Release Agreement on April 29, 1996, which released Cultor from all claims other than "any rights to which [plaintiff] may be entitled under any of the Company's Employee Benefit plans by reason of my employment by Cultor." Def.'s Ex. J at D0391.

The next communication in the record is a letter dated December 17, 1996 from Danis to Jeanette Brizel, Cultor director of employee resources, stating that "I am eligible for retiree Cultor Health Insurance starting September 26, 2000. Last communication from Bart … indicated that the Plan was not yet designed. I trust that with the design of the Cultor Health Insurance Plan that this is now better understood. I would appreciate any further information on this." Pl.'s Ex. 9, at 0013–14. On June 20, 1997, Brizel wrote to plaintiff:

In response to your request for information about the Health Care benefits to be provided to CFS retirees, when the design of the Cultor plan is finalized, it will likely reflect terms and conditions ,somewhat similar to the Retiree Health Plans that Pfizer previously maintained for the old FSG division. Specifically, in

order to collect benefits, one must be both age 55 and have 15 years of active service with Cultor after age 40 in order to qualify for such benefits. Once the design is finalized and implemented, we will let you know about it so that a determination can be made as to whether you qualify for benefits. However, preliminarily, it does not appear that you would.

Pl.'s Ex. 10, at 0010.

Danis wrote to Finegan on July 1, 1997, concerned that the June 20 letter from Brizel was "ambiguous about [his] eligibility for the retiree Cultor Health Care benefits for which [he is] eligible to participate in as early as age 55 or October 1, 2000." Pl.'s Ex. 11 at 0008. Danis also requested that Cultor provide a written commitment "of its intent to comply with this earlier guarantee," reminding Finegan of conversations during and after the January 1996 meeting and the various communications between Finegan and Danis following Danis' termination. *Id.* Danis further stated that "this guarantee was an important contributor to my execution of the Release Agreement on April 29, 1996 and to pursue a full time consulting career at that time." *Id.*

On September 29, 1997, Richard Russeth replied for Cultor, advising Danis that Cultor has still not completed the design or implementation of any retiree medical benefits plan. Russeth stated that he had reviewed the documents mentioned in the July 1, 1997 letter and did not believe they constituted a "guarantee" of retiree medical benefits, although he acknowledged that Finegan "was erroneous in his statement that you would be eligible for retiree medical benefits." Pl.'s Ex. 12, at 0005. Russeth also observed that as Finegan had specifically stated that "we can make no representations concerning the terms, conditions or coverage of such plan," "it is

difficult for Cultor to understand just what benefits exactly you thought this plan was going to confer on you." *Id.* at 0006.

Following his termination in March 1996, plaintiff received COBRA coverage through the end of 1996 from Pfizer under the Pfizer Plan. In 1997, Cultor adopted the Cultor Plan, which expressly terminated all previous Cultor plans, reserved Cultor's rights to amend, terminate or modify the Plan at any time, and provides coverage only to active employees, not retirees. Def.'s Ex. L. Plaintiff was covered by the Cultor Plan during the period of his COBRA benefits in 1997.

## III. DISCUSSION

### A. *Summary judgment*

A court shall grant a motion for summary judgment pursuant to Fed.R.Civ.P. 56 "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Silver v. City Univ.*, 947 F.2d 1021, 1022 (2d Cir.1991). The moving party bears the initial burden of establishing that no genuine issue of material fact exists and that the undisputed facts show that she is entitled to judgment as a matter of law. *Rodriguez v. City of New York*, 72 F.3d 1051, 1060 (2d Cir.1995). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988).

To defeat summary judgment, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Further, a party seeking to defeat a summary judgment motion cannot "rely on mere speculation or conjecture as to the true nature of facts to overcome the motion." *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir.1995) (*quoting Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 12 (2d Cir.1986)). "If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see also Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348 (material dispute requires more than "metaphysical doubt").

### B. *Claim for benefits owed under the Plan*

Defendant contends that, even assuming *arguendo* the existence of a Cultor plan for retiree medical benefits prior to 1997 and Danis' entitlement to some retiree benefits under that plan, the 1997 Cultor Plan expressly terminated any obligations it previously owed under any other plans. Defendants' argument misses the scope of plaintiff's claim that Cultor, through its representations, had promised plaintiff vested lifetime benefits, as to which Cultor's reservation or revocation would be ineffective. Plaintiff seeks relief under 29 U.S.C. §§ 1132(a)(1)(B)[6] and 1132(a)(3)[7] for clarification of his right to future benefits allegedly owed to him under some Cultor plan and for breach of fiduciary duty. These claims are considered together to the extent that plaintiff seeks a declaration that benefits are owed him under a Cultor plan.

It is undisputed that the Cultor Plan adopted in 1997 does not provide retiree medical benefits and "[a]ll prior plans established or maintained by the Employer are hereby revoked." Thus, unless plaintiff had a vested entitlement to retiree medical benefits prior to the enactment of the 1997 Plan or received material misrepresentations constituting a breach of fiduciary duty of truthfulness and accuracy, the benefits due to him under the Plan are limited to those contained in the 1997 Cultor Plan.[8]

▇▇▇ Under ERISA, retiree welfare benefit plans, unlike pension plans, "are generally not vested and an employer can amend or terminate a plan providing such benefits at any time." *American Federation of Grain Millers, AFL–CIO v. International Multifoods Corp.,* 116 F.3d 976, 978 (2d Cir.1997). However, if an employer contracts to provide vested medical benefits, the promise will be enforced and those benefits may not be reduced or changed. *See Schonholz v. Long Island*

---

**6.** "A civil action may be brought by a participant or beneficiary ... to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his right to future benefits under the terms of the plan ...."

**7.** "A civil action may be brought ... by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to provide other appropriate equitable relief ... (ii) to enforce any provisions of this subchapter or the terms of the plan ...."

**8.** Plaintiff's claim of a breach of fiduciary duty based on material misrepresentations is discussed in part C, *infra.*

*Jewish Medical Center*, 87 F.3d 72, 77 (2d Cir.1996).

 When an ERISA plan document "unambiguously indicates whether retiree medical benefits are vested, the unambiguous language should be enforced." *Multifoods*, 116 F.3d at 980. On the other hand, "to reach a trier of fact, an employee does not have to 'point to unambiguous language to support [a] claim. It is enough [to] point to written language capable of reasonably being interpreted as creating a promise on the part of [the employer] to vest [the recipient's] ... benefits.'" *Id.* (alterations in original) (*quoting Schonholz*, 87 F.3d at 78). To support a claim for benefits owed under a plan, the promise to vest benefits must be found within the text of the plan documents themselves. *See Joyce v. Curtiss–Wright Corp.*, 171 F.3d 130, 135 (2d Cir.1999) ("The absence of language ... flatly rejecting the concept of vesting does not alter the retirees' failure to identify language that affirmatively operates to imply vesting."). Where an ERISA plan is silent as to vesting or reserves the employer's right to amend or terminate benefits at any time, extrinsic evidence such as "informal communications between an employer and plan beneficiaries" cannot amend the plan to create a promise of vested benefits "absent a showing tantamount to proof of fraud." *Moore*, 856 F.2d at 492.

 Plaintiff's counsel properly conceded at oral argument that the record contains no evidence of any representations by defendants promising vested benefits made to Danis prior to or in connection with the adoption of the 1997 Cultor Plan, and plaintiff has conceded that no one ever promised him "that benefits would be lifetime benefits," Danis dep. at 118. In the further absence of any language in the Pfizer Plan or any Cultor Plan that could reasonably be interpreted as a promise to vest benefits, there is no support for plaintiff's claim of a vested entitlement to any lifetime retiree medical benefits from Cultor under any Cultor plan.[9]

Danis misconceives the legal distinction between being eligible for benefits and having a right to receive those benefits for his lifetime. Thus, even if Cultor's representations, misrepresentations and omissions could be construed as a promise that plaintiff would be eligible for some retiree medical benefits when he retired at fifty-five, that "promise" constitutes no commitment as to what the terms of those benefits would be or that the benefits themselves could not be discontinued or changed. Although Danis apparently believed that he would receive some form of medical benefits from Cultor for the duration of his retirement, *see* Danis Aff. at ¶ 8, he points to nothing in the record from which an inference of such intent to vest benefits under either a formal or informal plan can be drawn.

By plaintiff's own admission, he was aware that "Pfizer had retained the right to modify or terminate its plan." *See* Danis Aff. ¶ 8. Since the Pfizer Plan made no promise of unchanging, lifetime retiree medical benefits, the letter sent by Cultor's president Haken Lauren on December 11, 1995 informing plaintiff that his benefits at Cultor would be "comparable" to those he received from Pfizer cannot possibly be construed as containing an additional promise of vested lifetime retiree medical benefits, since that would in fact

**9.** Plaintiff's explanation of his claims in his deposition is less than clear: "Q: Are you claiming that when Joseph Danis retires, he has a claim to nonterminable retiree benefits? A: Yes." Danis dep. at 103. "Q: Are you claiming that you have a right to benefits which cannot be terminated by Cultor? A: No." *Id.* at 104.

contradict the description of comparability, as Pfizer's plan clearly had no such promise. The Q & A Brochure purported to address changes Cultor intended to make to benefits; while it did not fully describe eligibility terms, it contained no language indicating any promise to vest benefits, and the absence of an explicit reservation of rights in the Q & A Brochure provides no basis from which such an inference can be drawn. Finegan's letters in March and April 1996 expressly informed plaintiff that Cultor made no representations as to the terms or conditions of retiree medical benefits or the lifetime availability of such benefits. Finally, even assuming that Cultor committed as part of the purchase agreement to maintaining comparable benefits for three years, not only did that three year window expire before plaintiff reached the eligibility age of fifty-five, but those benefits would be "comparably" non-vested.

Plaintiff contends that "[w]hen Cultor promised to provide comparable benefits to those provided by Pfizer, I understood those benefits to include retirement medical benefits, and that those benefits would have been available for my lifetime, as they would have at Pfizer." Pl. Aff. ¶ 8. Plaintiff's evidence gives no support to the legal enforceability of his belief. Indeed, at oral argument plaintiff's counsel accurately confirmed that the Pfizer Plan, in fact, did not provide vested retiree medical benefits.

As there are no medical benefits owed to retirees under any extant Cultor plan and plaintiff has shown no other basis for inferring vested benefits from any prior plan or promise, defendants are entitled to summary judgment on plaintiff's claim under 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3) that retiree medical benefits are owed him under the Cultor Plan (Counts I and II).

### C. *Breach of Fiduciary Duty*

Plaintiff also seeks relief for alleged breach of fiduciary duty based on representations made to him in 1995 and 1996, which he claims led him to believe that he was eligible for Cultor retiree medical benefits upon reaching age fifty-five because he met the 40 + 10 Rule at the date of purchase. Plaintiff asserts his breach of fiduciary duty claim under both §§ 1132(a)(1)(B) and 1132(a)(3), claiming that Cultor breached its fiduciary duty by negligently or intentionally misinforming him that he would be eligible for retiree benefits when he reached fifty-five, and now denying him benefits.

Having succeeded on their argument that plaintiff is not entitled to benefits under § 1132(a)(1)(B), defendants unpersuasively argue that plaintiff cannot sue under § 1132(a)(3) to recover for a breach of fiduciary duty because he has a remedy under § 1132(a)(1)(B). For the reasons discussed below, the Court disagrees.

In *Varity Corp. v. Howe,* 516 U.S. 489, 509, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), the Supreme Court held that individual equitable relief may be available under § 1132(a)(3) for a breach of fiduciary duty. The Court noted that

[W]e should expect that where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be "appropriate."

But that is not the case here. The plaintiffs in this case could not proceed under the first subsection because they were no longer members of the [Plan] and, therefore, had no "benefits due [them] under the terms of [the] plan." § 502(a)(1)(B). They could not proceed under the second subsection because that provision, tied to § 409, does not provide a remedy for individual benefi-

ciaries. They must rely on the third subsection or they have no remedy at all. We are not aware of any ERISA-related purpose that denial of a remedy would serve. Rather, we believe that granting a remedy is consistent with the literal language of the statute, the Act's purposes, and pre-existing trust law.

*Id.* at 511, 116 S.Ct. 1065.

Here, as in *Varity*, plaintiff cannot proceed under § 1132(a)(1)(B) because, as discussed above, he has no entitlement to the benefits he seeks under the terms of any Cultor plan, including the 1997 Cultor Plan. Plaintiff does not, and cannot, proceed under § 1132(a)(2) because it provides no remedy for individual beneficiaries. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). As in *Varity*, § 1132(a)(3) provides the plaintiff with the only possible remedy for the alleged breach of fiduciary duty for Cultor's alleged misrepresentations that he would have benefits under some plan. Moreover, unlike other cases finding that a plaintiff cannot pursue a claim for breach of fiduciary duty under § 1132(a)(3) where he also seeks benefits due under the terms of a plan under § 1132(a)(1)(B), plaintiff here argues both that he is presently owed benefits under the terms of some Cultor plan *and* that Cultor as a fiduciary made material misrepresentations about the terms of the benefits he would receive if he accepted employment with Cultor and that he acted in detrimental reliance on those misrepresentations. *Cf. Wald v. Southwestern Bell Corp. Customcare Med. Plan,* 83 F.3d 1002, 1006 (8th Cir.1996) (holding that a plaintiff seeking individual relief under ERISA § 502(a)(3) under a breach of fiduciary duty theory did not have a cause of action when the alleged breach of fiduciary duty was a failure to distribute benefits in accordance with the plan); *Montesano v. Xerox Corp. Retirement In-come Guarantee Plan,* 117 F.Supp.2d 147, 165–66 (D.Conn.2000) ("[P]laintiffs cannot simultaneously maintain a claim for benefits under § 502(a)(1)(B) and a claim for breach of fiduciary duty under § 502(a)(3) where, as here, the relief sought is substantively the same in both counts. Even though the plaintiffs have couched their claim for relief under § 502(a)(3) in equitable terms, they are ultimately seeking the same relief they seek in their § 502(a)(1)(B) claim—benefits under the Plans.").

■ Therefore, although defendants are correct that "[p]laintiff cannot escape ERISA's jurisdictional limitations by masquerading his claims for benefits as claims for breach of fiduciary duty," Doc. # 40 at 16, a more proper view of the alternative theory on which plaintiff makes his claim is that the breach of fiduciary duty "masquerades" as a claim for benefits. Although plaintiff stated in his deposition that he seeks retiree medical benefits under a Cultor plan, his counsel clarified at oral argument that the breach of fiduciary duty claim is based in part on the theory that Cultor made misleading promises to create a plan with retiree medical benefits for which plaintiff would be eligible and that plaintiff detrimentally relied on those promises. Accordingly, plaintiff seeks seeking an equitable remedy for those alleged misrepresentations that may include the creation of a benefits plan to provide the retiree medical coverage he was allegedly promised. As there is no plan remedy for plaintiff under §§ 1132(a)(1)(B) or 1132(a)(2), he may pursue a claim for equitable relief for the alleged breach of fiduciary duty under § 1132(a)(3).

### D. *Breach of fiduciary duty by material misrepresentation*

■ ERISA requires a fiduciary to "discharge his duties with respect to a plan

solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a). Thus, "ERISA fiduciaries must provide complete and accurate information in response to beneficiaries' questions about plan terms and/or benefits." *Becker v. Eastman Kodak Co.*, 120 F.3d 5, 8 (2d Cir.1997). Consistent with this duty, the Second Circuit has held that "when a plan administrator speaks, it must speak truthfully." *Mullins v. Pfizer, Inc.*, 23 F.3d 663, 669 (2d Cir.1994).

■ To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that plaintiff relied on those misrepresentation to his detriment. *See Varity Corp. v. Howe*, 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996); *Ballone v. Eastman Kodak Co.*, 109 F.3d 117, 122, 126 (2d Cir.1997); *In re Unisys Corp. Retiree Medical Benefit ERISA Litig.*, 57 F.3d 1255, 1266 (3d Cir.1995).

■ Whether a misrepresentation is material is " 'a mixed question of law and fact' based on whether 'there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision ....' " *Mullins*, 23 F.3d at 669 (quoting *Fischer v. Philadelphia Elec. Co.*, 994 F.2d 130, 135 (3d Cir.1993)); *see also Larsen v. NMU Pension Plan Trust of the NMU Pension & Welfare Plan*, 767 F.Supp. 554, 558 (S.D.N.Y.1991) ("defendants are also liable for breach of fiduciary duty if they provided materially misleading information to decedent or if

the information supplied was insufficient to enable him to make an informed decision") (quoting *District 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F.Supp. 1468, 1480 (S.D.N.Y.1983)).

Plaintiff contends that he made two sets of decisions in reliance on alleged misrepresentations by Cultor: the initial decision to accept employment with Cultor in January 1996 rather than pursing opportunities to remain at Pfizer, and the decisions to sign the release form accepting a severance package and to pursue consulting work following his termination by Cultor in March 1996. For the reasons discussed below, the Court concludes as a matter of law that plaintiff's initial decision was not made in reliance on any misrepresentation properly attributable to Cultor, and that any misrepresentations by Cultor with respect to the latter decisions were not material.

■ Plaintiff claims that he "would have pursued continued employment with Pfizer, which might have been available to [him] at the time," Danis Aff. ¶. 9, had he not believed that "the retirement benefits to be provided by Cultor only required that he be over 40 years of age at the close of the Cultor–Pfizer deal and that he be employed for 10 years." Doc. # 45 at 5. Plaintiff points to the grin from Bart Finegan during the January 1996 meeting in response to his inquiry about eligibility, the understanding he had from the transitional meetings of what the terms of the Cultor benefits plan would be, and the Q & A booklet's omission of any reference to the continuation of the 55 + 15 after 40 Rule for eligibility as misrepresentations upon which he allegedly based that decision.[10]

---

10. Plaintiff also claims that evidence suggesting that Cultor was contemplating terminating retiree medical benefits prior to the

purchase is evidence of Cultor's misrepresentations. *See* Pl.'s Ex. 14. However, the document on which plaintiff relies recom-

However, plaintiff fails to provide any evidence that misrepresentations were made to him by any Cultor employee before he accepted employment with Cultor. Any statements made by Finegan in December 1995 or January 1996 were necessarily made in his capacity as Pfizer employee, are not shown to have been inferrably adopted by Cultor, and cannot amount to a breach of fiduciary duty by *Cultor*. Although plaintiff admitted during his deposition that it had occurred to him at the time that Finegan was a Pfizer employee, he did not direct any inquiry about benefits to anyone from Cultor before accepting employment. Danis dep. at 77.

Further, although plaintiff's notes of the December 1995 and January 1996 meetings indicate that eligibility for retiree medical benefits depended on meeting the 40 + 10 Rule at the time of the purchase, the record lacks any basis from which to conclude that the source of these notes were representations made by *Cultor*. Moreover, as plaintiff stated in his deposition, it was because "there was no time frame" for eligibility for retiree benefits apart from the 40 + 10 Rule described at the meeting that he asked Finegan whether he would be eligible after working for Cultor for one nanosecond. Danis dep. at 32. Thus, plaintiff offers insufficient evidence on which a reasonable fact-finder could conclude that Cultor misrepresented that plaintiff would be eligible regardless of the number of years he worked at Cultor following the transfer.

Indeed, the only evidence directly attributable to Cultor is the December 1995 letter from Cultor's president Haken Lau-

ren promising *comparable* benefits and the Q & A Brochure describing the 40 + 10 Rule as a *change* to retiree benefits. The former does not misrepresent in any way the terms under which plaintiff would become eligible for benefits. Although Jeannette Brizel acknowledged that the Q & A Brochure "could have been drafted better," Def. Ex. C at 74–77, even if it lacked clarity or accuracy by omitting the unchanged term of eligibility (the 55 + 15 after 40 Rule), it was not material to plaintiff because he does not recall receiving it. Danis dep. at 74.

Despite his concern that the draft employment agreement he received in December 1995 did not obligate Cultor to provide benefits, Danis chose to rely on the "good feeling" he had gotten based on the meetings and the "clarification" by a Pfizer employee when he signed the employment agreement, requiring Cultor to pay those benefits described in the Purchase Agreement, without ever requesting a copy of that agreement or clarification its contents. In short, Danis does not provide any evidence that prior to his employment he asked, much less received from, any Cultor employee a representation that he would be eligible for lifetime benefits regardless of the number of years he worked at Cultor after turning 50.

▆▆▆ After plaintiff's termination in March 1996, he made a second set of decisions—to sign the release agreement and pursue consulting work—that he claims were the result of Cultor's material misrepresentations about his eligibility for retiree medical benefits. Those decisions

---

mends either terminating retiree medical coverage or *retaining* Pfizer's option to amend or terminate benefits at any time. *Id.* at D0906. Further, Cultor was obligated to provide comparable benefits for only three years. In the absence of any evidence

that Cultor ever promised vested or lifetime medical benefits to Danis, evidence of Cultor's intent to eliminate retiree medical benefits has no bearing on plaintiff's breach of fiduciary duty claim.

were allegedly based in part on Finegan's March 29, 1996 letter informing plaintiff that "you will be eligible for retiree medical insurance when you achieve age 55."

This statement by Finegan, in contrast to his smile, as defendant's vice president of employee resources responding to plaintiff's statement that "it is my interpretation that I am eligible for Cultor retirement medical coverage since I was >40 and >10 years service at the close and not excluded that I would be eligible for this coverage with the magic retirement age of 55," Pl.'s Ex. 5, at 0025, was undisputedly made by Cultor in a fiduciary capacity. *See Varity*, 516 U.S. at 502, 116 S.Ct. 1065. Finegan's letter obviously was inaccurate, as plaintiff would never be eligible for retiree medical benefits because he did not also meet the terms of the 55 + 15 after 40 Rule. Pl.'s Ex. 6 at 0021.

However, a misrepresentation must also be "material" to give rise to liability for a breach of fiduciary duty. Finegan's next sentence stating that: "The specific terms and conditions of this Plan have not yet been decided, and *we can make no representation concerning the terms, conditions or coverage of such plan,*" *id.* (emphasis added), rendered the promise of eligibility for benefits illusory by explicitly informing plaintiff that there was no guarantee of any content to that promise. Plaintiff understandably conceded in his deposition that he "couldn't identify any of the benefit terms of the plan." Danis dep. at 112. The March 1996 letter from Finegan is insufficient to permit a factfinder to conclude either that Cultor was promising plaintiff vested retiree medical benefits or that it was a promise of sufficient specificity on which he could have detrimentally relied in some way.

As with his claim that he might have pursued continued employment with Pfizer, Danis' claims that he chose to seek consulting work rather than pursue a job that might provide retiree medical benefits based on Finegan's representations of coverage, Danis dep. at 141–43, are based on pure speculation. Indeed, it is undisputed that Danis "did not reject job opportunities based on any representations by Cultor regarding retiree medical coverage nor did he forego seeking other employment opportunities based solely on his expectations regarding retiree medical benefits." Def.'s Local Rule 9(c) Statement, ¶ 42; Pl.'s Local Rule 9(c)(2) Statement, ¶ 42. Moreover, although plaintiff informed Cultor that his decision to sign the Release Agreement in April 1996 was made in reliance on Finegan's March 1996 letter, his counsel conceded at oral argument that plaintiff provides nothing from which a reasonable factfinder could infer that he would have not made the same decision to accept over $330,000 in severance pay absent Finegan's March 1996 misrepresentation about eligibility.

Finally, upon receiving Danis' letter in April 1996 inquiring about the availability of lifetime benefits, Finegan immediately responded that he "cannot, at this time, comment on the lifetime availability of any benefits." Pl.'s Ex. 8, at 0019. At that point certainly plaintiff's continued reliance on the "good feeling" from conversations with Finegan had no reasonable basis. Given his failure to make any inquiry about what retiree medical benefits Cultor would provide and under what conditions, and in light of the entirely speculative nature of Danis' allegations that he would have acted differently absent Finegan's letter, Danis cannot, as a matter of law, establish that the alleged misrepresentation in the March 1996 letter was material causing his detrimental reliance.

In conclusion, the material facts here are undisputed for purposes of defendants' summary judgment motion. Danis and

Cultor agree on the substance of Bart Finegan's statements and when he made them. The factual disagreement surrounding whether Cultor in fact intended to provide retiree medical benefits, whether the Employment Agreement is a binding contract and whether it incorporates the terms of the Purchase Agreement, as well as the dispute about the effect of the Release Agreement, are therefore immaterial. Defendants are entitled to summary judgment on plaintiff's breach of fiduciary duty claims (Counts I, II and IV).

## IV. CONCLUSION

For the reasons discussed above, defendants are entitled to summary judgment on Danis' claims for benefits and for breach of fiduciary duty under §§ 1132(a)(1)(B) and (a)(3) (Counts I, II and IV). Defendants' objections to the Magistrate's Recommended Ruling [Doc. # 52] are SUSTAINED, and the ruling is adopted as to Count III.

The Clerk is directed to close this case.

IT IS SO ORDERED.